**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF RHODE ISLAND**

---

In re: Ariane Elisabeth Stuart Lepore,      Bk. No. 26-10101

Debtor      Chapter 13

---

### ORDER GRANTING TRUSTEE'S MOTION TO DISMISS AND DENYING REMAINING MOTIONS AS MOOT
### (this relates to Doc. ##40, 41, 47, 48, 49, 51, 54, 62, 72, 76, 79)

### I. Introduction

Before the Court is the Motion to Dismiss and Memorandum in Support Thereof (Doc. #47, the "Motion") filed by chapter 13 Trustee Charles A. Pisaturo, Esq. ("Trustee"), two motions filed by D'Amico Lending, LLC ("D'Amico"), seeking relief from the automatic stay or alternatively, dismissal of the instant case (Doc. ##40, 41, collectively, "D'Amico Motions"), the Objections thereto (Doc. ##48, 49, 51, collectively, "Debtor Objections") filed by *pro se* Debtor Ariane Elisabeth Stuart Lepore (the "Debtor"), the Motion for Protective Relief to Address Conflicts of Interest and to Preserve Estate Assets (Doc. #54, the "Motion for Protective Relief") filed by the Debtor, the Trustee and D'Amico's respective responses thereto (Doc. ##62, 72), and the Debtor's Reply (Doc. #79).[1] The Court held a hearing on the above referenced matters on April 22, 2026, during which the Debtor, the Trustee and counsel for D'Amico appeared (Doc. #82).

The Trustee seeks dismissal of the Debtor's chapter 13 case under 11 U.S.C. § 1307, citing the Debtor's ongoing inability to comply with her duties and obligations as a chapter 13 debtor. In support, the Trustee points to the Debtor's failure to file tax returns, make any plan

---

[1] During the April 22, 2026, hearing, both the Trustee and D'Amico addressed their overlapping arguments in support of dismissal. Thus, for the purposes of this Order, the Court shall refer to the Trustee and D'Amico's arguments in their filings and those made at the hearing, collectively, while ultimately deciding the Trustee's Motion. The Court is treating the Debtor's Motion for Protective Relief as both a substantive motion as well as a global response to the Trustee's Motion and the D'Amico Motions. The Court shall also consider the Debtor's arguments contained in the Debtor Objections and Reply as responsive to the Trustee's Motion.

payments, make post-petition mortgage payments, and obtain insurance on two heavily leveraged cross-collateralized rental properties[2] that are either uninhabitable or partially occupied.  The Trustee also cites the Debtor's inability to confirm a feasible plan due to her financial condition and various contingencies that make the Debtor's Amended Plan speculative and, even in the best-case scenario, not confirmable.  In response, the Debtor acknowledges her ongoing failures to comply with her duties under the Code, attributing them to overwhelming personal and financial matters, her *pro se* status, and the inability to utilize certain insurance proceeds[3] to rehabilitate the Woonsocket Property, which the Debtor admits she has not insured and is uninhabitable due to issues with the roof and sewer line.

Having considered the parties' arguments in their filings and the arguments made during several hearings, and for the reasons stated herein, the Court finds that the Trustee has demonstrated that there is "cause" requiring the Court, under the circumstances presented, to dismiss the Debtor's chapter 13 case pursuant to 11 U.S.C. § 1307(c) and (e).

**II.    Balancing a Debtor's Rights with their Obligations Under the Code**

Section 541(a)(1) of the Bankruptcy Code creates an estate upon the filing of a bankruptcy petition that includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  *In re Laflamme*, 397 B.R. 194, 199 (Bankr. D.N.H. 2008) (quoting 11 U.S.C. § 541(a)).  These interests include "[p]roceeds, product, offspring, rents, or profits of or from property of the estate . . . ."  11 U.S.C. § 541(a)(6).  *See In re Scholl*, 605 B.R. 163, 172-73 (Bankr. S.D. Ohio 2019) (noting that "the Fourth, Fifth, Seventh, and Eleventh

---

[2] The properties are located at 75 Harris Avenue in Woonsocket, Rhode Island (the "Woonsocket Property") and 1678 Northampton St. in Holyoke, Massachusetts (the "Holyoke Property").

[3] The Debtor and D'Amico dispute the Debtor's entitlement and right to use insurance proceeds totaling $26,352.56, which stem from insurance claims that the Debtor filed against the Woonsocket Property, and are in both the Debtor and D'Amico's name.  The insurance proceeds are being held by the Trustee at the Court's direction (Doc. #24).

Circuits have held '[p]roceeds of [an] insurance polic[y], if made payable to the debtor rather than a third party such as a creditor, are property of the estate and may inure to all bankruptcy creditors.'"); *In re Huff*, 332 B.R. 661, 664 (Bankr. M.D. Ga. 2005) ("The answer to whether the insurance *proceeds* are property of the debtor's bankruptcy estate depends on whether the debtor has an *interest* in the proceeds."); *In re Wiesner*, 267 B.R. 32, 36 (Bankr. D. Mass. 2001) ("Whether the homeowner's insurance policy is property of the estate under Section 541(a)(1) depends on whether the debtor had an interest in the policy at the time the bankruptcy was commenced").  In a chapter 13 case, "property of the estate also includes, 'all property of the kind specified in [§ 541] that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of [the Bankruptcy Code], whichever occurs first.'"  *In re Scholl*, 605 B.R. at 173 (quoting 11 U.S.C. § 1306(a)(1)). As elicited at several hearings,[4] there are two checks that were issued by an insurer prior to these proceedings relative to an active insurance claim involving the Woonsocket Property, made payable to both the Debtor and D'Amico.  In turn, the Court has little pause that the insurance proceeds are an asset of the estate.  However, as discussed below, the Debtor's right to use the insurance proceeds is not absolute but rather conditional.

Section 1303 of the Bankruptcy Code gives chapter 13 debtors the "exclusive right to use and control" property of the estate in accordance with §§ 363(b), 363(d), 363(e), 363(f), and 363(l).  *In re Laflamme*, 397 B.R. at 204 (citing 11 U.S.C. § 1303); *see* 11 U.S.C. § 363(b), (d), (e), (f).[5]  "Section 363(d) in turn empowers [a chapter 13 debtor] to use, sell, or lease

---

[4] *See* Doc. ##26*,* 39, and 82.

[5] Notably, *LaFlamme* only addressed a debtor's use of earnings to cover necessary and ordinary living expenses. *See In re LaFlamme*, 397 B.R. at 204-206.  The present situation is more complicated and, as stated above, this Court believes the Debtor has a conditional right to use the insurance proceeds.

property of the estate under § 363(d) and (c), subject to limitations imposed by the automatic

stay provisions in § 362(c), (d), (e), and (f)." *Id.* at 205.  Section 363(b)(1) gives a chapter 13

debtor the right "after notice and hearing, [to] use . . . other than in the ordinary course of

business, property of the estate."  11 U.S.C. § 363(b)(1); *see also Collier on Bankruptcy* ¶

1303.03[1] (Richard Levin & Henry J. Sommer eds., 16th ed) (stating a "debtor's right to use or

lease property of the estate in the ordinary course of his or her affairs is also implicit in [§]

1306(b) . . . .").  In turn, a "debtor also remains in possession of all property of the chapter 13

estate, '[e]xcept as provided in a confirmed plan or order confirming a plan.'" *In re Laflamme*,

397 B.R. at 204 (quoting 11 U.S.C. § 1306(b)).

In striking a balance between a debtor's right to use property of the estate and their

obligations under the code, this Court is guided by the following:

> a debtor's rights to use property of the estate, however, must be
> tempered against the more forceful provisions of the Bankruptcy
> Code that instruct on the manner in which a debtor who seeks to
> obtain a discharge of debts under Chapter 13 must conduct himself
> or herself, including [but not limited to] §§ 1322, 1325(b)(1)(B),
> [and] 1326 . . . .

*In re Scholl*, 605 B.R. at 173.  Accordingly, a debtor's right to use property of the estate during

the pendency of a chapter 13 case and enjoyment of the automatic stay is qualified by their

compliance with their duties and obligations as a chapter 13 debtor.

As explained in detail below, the Trustee has identified that the Debtor has an inability to

satisfy multiple chapter 13 requirements, making dismissal in the best interest of the creditors

and the estate.

III.    **Grounds Supporting Dismissal**

    A.  **Failure to File Tax Returns**

The Trustee seeks dismissal pursuant to § 1307(e) based on the Debtor's failure to file tax

returns as required by § 1308.  *See* 11 U.S.C. § 1307(e); 11 U.S.C. § 1308 (requiring chapter 13 debtors to file "not later than the day before the date on which the meeting of the creditors is first scheduled . . ." with the "appropriate tax authorities all tax returns for all taxable periods ending during the 4-year period ending on the date of the filing of the petition.").  Section 1307(e) provides in pertinent part: "[u]pon the failure of the debtor to file a tax return under section 1308, on request of a party in interest . . . and after notice and a hearing, the court shall dismiss a case . . . ."  11 U.S.C. § 1307(e).

The Trustee states that the Debtor has not provided him with copies of her tax returns for tax years 2023 to 2025.  The Debtor admits that she has been unable to file tax returns for the years 2023, 2024, and 2025.  During the most recent hearing, the Debtor explained that she had not filed the returns due to financial reasons but had since acquired funds to pay a tax preparer. However, the Debtor acknowledged that the available money was rental income from the Holyoke Property, which is part of D'Amico's cash collateral.  The Debtor also admitted that she was unsure whether she had the necessary information to complete the returns and explained that she did not know whether she had all the required documents, let alone their location.  As a result, the Debtor has not established a path forward to address the preparation and filing of the returns with any milestones that could be met within a reasonable timeframe.  Even if her secured creditors consented to the use of the rental proceeds to complete the returns, which they have not, the Debtor is admittedly unable to complete the returns.  For these reasons, 11 U.S.C. § 1307(e) requires dismissal of these proceedings.

### B.  Dismissal for "Cause" under § 1307(c)

Section 1307 of the Bankruptcy Code provides for the conversion of a chapter 13 case to chapter 7 or dismissal of a chapter 13 case entirely upon the request of a "party in interest,"

"whichever is in the best interests of creditors and the estate, for cause."  11 U.S.C. § 1307(c).

The statute lists 11 non-exclusive examples of sufficient cause.  *See* 11 U.S.C. § 1307(c)(1)-(11);

*see In re Cabral*, 285 B.R. 563, 572 (B.A.P. 1st Cir. 2002).  The moving party bears the burden

of proof.  11 U.S.C. § 1307(c); *In re Zizza*, 500 B.R. 288, 292 (B.A.P. 1st Cir. 2013).

The Trustee seeks dismissal for "cause" under § 1307(c)(4) based on the Debtor's

"failure to commence making timely payments under [§] 1326."  11 U.S.C. § 1307(c)(4).

Section 1326(a)(1) requires a debtor to "commence making payments not later than 30 days after

the date of the filing of the plan or the order for relief, *whichever is earlier . . . .*"  11 U.S.C. §

1326(a)(1) (emphasis added).  The Debtor commenced this case on February 5, 2026.  She filed

her first plan on March 23, 2026, which was defective (Doc. #34), and her Amended Plan on

April 7, 2026 (Doc. #50).  Accordingly, the Debtor should have made her first payment no later

than March 7, 2026.  Nevertheless, both the Trustee and the Debtor agreed she had not made any

payments as of the date of the hearing.  During the hearing the Debtor initially stated that she did

not make the required payments because she did not know how much to pay.  However, the

Debtor also admitted that she had not made the proposed payments outlined in the initial or

Amended Plan despite having proposed specific amounts.  Consequently, the Court finds there is

"cause" to dismiss under § 1307(c)(4).  *See In re Witkowski*, 523 B.R. 300, 306-06 (B.A.P. 1st

Cir. 2014) (holding that debtor's failure to make plan payments and "unexcused failure" to

attend the § 341 meeting "easily justif[ied]" dismissal of the chapter 13 case) (citing *In re Jones*,

174 B.R. 8, 12 (Bankr. D.N.H. 1994); *In re Kaspar*, 60 B.R. 658, 659-60 (Bankr. D.R.I. 1986)).

Although not directly raised in the Trustee's Motion, the Debtor's failure to timely file a

plan was discussed during the hearing and is set forth in the D'Amico Motions.  *See* 11 U.S.C. §

1307(c)(3) (providing that "failure to file a plan timely under section 1321" of the Bankruptcy

6

Code is "cause" to dismiss); 11 U.S.C. § 1321 (requiring the Debtor to file a plan).  On February 5, 2026, the Court issued an order requiring the Debtor to file a chapter 13 plan and other required documents by February 22, 2026 (Doc. #5).  While the Debtor had sought and received two extensions of the deadline (Doc. ##12, 15, 28, 29), the Debtor did not file her Amended Plan until April 7, 2026.  Ordinarily this would not constitute an egregious delay, however, when coupled with the Debtor's other failures to comply with her chapter 13 duties this failure further supports the finding of "cause" to dismiss.[6]

Next, the Trustee seeks dismissal because the Debtor's plan is not feasible and cannot be confirmed.  Indeed, "there is no legitimate purpose for a debtor to remain in chapter 13 and thereby restrain creditors from exercising their rights under applicable non-bankruptcy law, if the debtor, after given fair opportunity to do so, has been unable to propose a chapter 13 plan that meets the confirmation requirements of 11 U.S.C. § 1322 and § 1325." *In re Blanco*, 520 B.R. 476, 483 (Bankr. E.D. Pa. 2014).  Thus, there is "cause" to dismiss "under section 1307(c)(1) when the chapter 13 debtor has been given a reasonable time to propose a viable plan and the debtor will be unable to do so." *In re Blanco*, 520 B.R. at 483–84.

In support, the Trustee cites the Debtor's Schedules I and J, which show negative monthly cash flow exceeding $11,000, coupled with her inability to file the required tax returns (a precondition to confirmation under § 1325), and the Amended Plan's failure to provide for full payment of D'Amico's secured claim.  During the hearing both the Trustee and D'Amcio emphasized that the complexity and speculative nature of the Debtor's finances demonstrate her inability to propose a feasible plan.  Despite the case having only been pending for a few months,

---

[6] It should not be overlooked that all parties acknowledge that the complex issues in this case require an expedient resolution, a fact demonstrated by multiple expedited or emergency filings being made by the Debtor and D'Amico.  Under these circumstances, it is incumbent upon the Debtor to, at a minimum, demonstrate a path towards a feasible plan, which did not occur.

they contend that the Debtor's financial situation (namely her inability to fund a plan due to her insufficient income, nonpayment of adequate protection payments to D'Amico and proposed plan payments, and pending litigation) make the plan facially infeasible.  In essence, the Trustee and D'Amico (by virtue of its own motion) are asking the Court to "stop the bleeding" as there is no likelihood that the Debtor will be able to propose a viable plan given her circumstances.  In turn, the Trustee argues that permitting the case to continue under the current circumstances would prejudice creditors and interested parties.  Thus, the Court must evaluate the Debtor's financial condition and the feasibility of the Debtor's proposed Amended Plan.

### i.    The Debtor's Financial Condition

The Debtor is unemployed and primarily relies on rental income to sustain herself and her dependent child.  On Schedule I, the Debtor listed a total combined monthly income of $1,800, consisting of $1,200 in monthly rental income and $600 in child support (Doc. #31 at 34 and 35).[7]  During the hearing, the Debtor explained that she receives the scheduled $1,200 in rental income from a garage located on the Woonsocket Property, which is otherwise unoccupied.  The Debtor also disclosed that she receives $2,200 in rental income from the Holyoke Property, which does not appear on Schedule I.[8]  During the hearing, the Court inquired of the parties whether there was an assignment of rent clause in the promissory notes attached to the D'Amico Motions.  In response, D'Amico confirmed that the rental proceeds are subject to such a clause and are part of its cash collateral, to which the Debtor did not object or respond otherwise.  The Trustee also acknowledged the Court's concern over the impact of an assignment of rent on the Debtor's eligibility pursuant to 11 U.S.C. §109 and the feasibility of Debtor's proposed plan.

---

[7] At the hearing, the Debtor referenced a change in circumstances regarding custody of her child.  In turn, it is not clear to the Court whether the debtor is still receiving child support.

[8] To date, the Debtor has not amended Schedule I and J to reflect the newly disclosed $2,200 in rental income.

Schedule J lists monthly expenses of $13,786.81 (Doc. #31 at 39) resulting in a monthly net income of -$11,986.81.  In addition to personal expenses, her monthly expenses include monthly debt payments to D'Amico in the amount of $6,968.75 and a mortgage of $2,900 on a different property (presumably the Holyoke Property) (Doc. #31 at 37).  During the hearing the Debtor admitted that she has not made post-petition mortgage payments to D'Amico or proposed plan payments to the Trustee.  Based upon Schedules I and J, the Debtor does not have the ability to make any post-petition payments, which is cause for dismissal of the case, or alternatively, cause to grant D'Amico's request for relief from the automatic stay.

Schedule A/B lists the Woonsocket Property and Holyoke Property (Doc. #31 at 4 and 5). The Woonsocket Property has a scheduled value of $412,000 while the Holyoke Property has a scheduled value of $440,000 (Doc. #31 at 4).[9]  Schedule D lists D'Amico with a claim of $557,500 secured by the Woonsocket Property, which the parties agree is lower than the total balance due of $610,636.39.  The parties further agree that D'Amico's secured claim on the Woonsocket Property is cross-collateralized by the Holyoke Property.  The Holyoke Property has a scheduled mortgage balance of $309,000 and may be headed into foreclosure per the Debtor's statements during the hearing.  As of April 22, 2026, the Debtor's arrears due to D'Amico exceed $50,000.  Notably, the parties agree that the loan secured by the Woonsocket and Holyoke Property matures in its entirety in July 2026.  During the hearing the Debtor admitted that she did not have the funds to pay for water, sewer, insurance, or taxes on the Woonsocket Property.  As a result, D'Amico previously obtained force-placed insurance, which counsel did not believe covers liability for the Debtor and/or the estate.

---

[9] The Court understands that the Debtor is not obligated on the mortgage and note associated with the Holyoke Property, however, she reportedly has a 93% ownership interest in the property.  As a result, its existence impacts her financial picture.

9

### ii.    The Amended Plan

The Debtor's Amended Plan (Doc. #50) proposes total plan payments of $85,890.00 to be paid over a term of 60 months as follows: $200 for 3 months + $800 for 3 months + $1,535.00 for 54 months.  Part 2, C. of the Amended Plan states:

> that the initial plan payments due shortly after filing have not yet been made. Any such initial payment deficiency is addressed and cured through the stepped payment structure of this proposed plan, which provides for increasing payments over time and ultimately exceeds the amounts necessary to satisfy all plan obligations.

Doc. #50 at 2.  It also proposes curing $41,312.50 in pre-petition arrears owed to D'Amico and $25,000 in arrears owed to Freedom Mortgage, the first mortgagee on the Holyoke Property, and to maintain post-petition mortgage payments to D'Amico and Freedom Mortgage.  The Amended Plan contemplates paying the priority claims of the City of Holyoke and the City of Woonsocket for past property taxes, water and sewer, totaling $6,697.17.  General unsecured creditors are to receive a *pro rata* share of $3,771.00.  The Amended Plan does not provide for the full payment of D'Amico's secured claim, which will mature during the proposed plan term, making the plan facially unconfirmable.  Finally, the Amended Plan does not address any priority tax claims, and since the Debtor is unable to file the returns necessary to determine her tax liability, the Debtor is also unable to propose a plan which the Court could consider confirming.

### iii.    The Amended Plan is Not Feasible

The Debtor's Amended Plan is facially infeasible and not confirmable pursuant to § 1325(a).  *See* 11 U.S.C. § 1325(a)(1)-(9) (outlining requirements for confirmation).  As stated above, the proposed payments, which the Debtor admitted to being unable to pay, are insufficient to cover the full amount of D'Amico's secured claim, which will mature in July 2026.  *See* 11

10

U.S.C. § 1325(a)(5).  Moreover, the Debtor's Schedules I and J show a negative cash flow

exceeding $11,000, demonstrating an inability to "make all payments under the plan and to

comply with the plan."  11 U.S.C. § 1325(a)(6).  Additionally, the Amended Plan is also not

confirmable because the Debtor is unable to file her tax returns, which is a prerequisite for

confirmation.  *See* 11 U.S.C. § 1325(a)(9).  Put simply, even if the Court granted all of the

Debtor's requested relief and provided time to address issues such as the filing of tax returns, the

Debtor has not put forward any arguments or evidence that she could overcome the extraordinary

deficit in monthly cash flow to allow her to satisfy all necessary debts in the most optimistic of

circumstances.

### iv.    The Amended Plan is Speculative and Prejudicial to Creditors

The Debtor is unemployed and has an interest in two heavily leveraged properties that

currently are only capable of generating $3,400 combined due to the uninhabitable condition of

the Woonsocket Property.  Although the Debtor has an interest in the insurance proceeds that she

contends could make the Woonsocket Property habitable, her ability to do so is not supported by

the record in this case.  The Debtor has acknowledged multiple issues affecting the

Woonsocket's Property's habitability, including a sewer issue that is being litigated in the Rhode

Island Superior Court (which, due to the Debtor's request for expedited treatment of that matter

being denied, the Debtor admitted will be a slow process), damage to the roof, and interior water

and mold damage, the remediation of which will be costly.  Additionally, the Debtor has not

demonstrated that the various issues affecting the Woonsocket Property can be fixed for an

amount equal to or less than the insurance proceeds.  Put another way, even if the Debtor could

fix the roof, water, and mold damage, the sewer issue will continue to make the property

uninhabitable.

11

To date, the Debtor has not provided the Court with any evidence supporting her ability to remediate the various structural and sewer line issues for a specific amount and/or a date of completion. Rather, the Debtor appears to be asking this Court to allow her to use D'Amico's collateral for an unknown period of time, without any adequate protection or D'Amico's consent, in order that she can attempt a reorganization under very speculative circumstances. Such a request is prejudicial to creditors where, as here, the Debtor admitted that D'Amico's collateral is continuing to depreciate (Doc. # 54 at 2) and that she is unable to make adequate protection payments or insure the property (resulting in additional costs to D'Amico and risk of liability to the estate).[10]

During the hearing, the Court inquired about the realistic prospect of the Amended Plan's success and the related contingencies such as fixing the property within a budget that has not been established, being able to rent the property at an amount necessary to service all debt payments and related property expenses, and securing a favorable outcome in the pending litigation. The Debtor acknowledged that if she cannot overcome these obstacles her plan is to refinance or sell the Woonsocket Property, which is not reflected in the proposed Amended Plan and adds to its speculative nature. Consequently, the Court finds that there is cause to dismiss under 11 U.S.C § 1307(c)(1). *See In re Blanco*, 520 B.R. at 484.

Although the Debtor has asked the Court to use its equitable powers under 11 U.S.C. § 105 of the Code to permit her to use the insurance proceeds and continue with her chapter 13 case, those powers are not without limitation nor would it be an appropriate use of said powers to address this situation where the Bankruptcy Code and case law provide clear guidance. *See* 11

---

[10] The Debtor made arguments regarding an alleged conflict of interest involving D'Amico and an insurance adjuster. This argument is not determinative to the issues raised in the Trustee's Motion. In turn, the Court is not making any determination or adjudicating the arguments of the Debtor relative to any alleged conflict of interest.

U.S.C. § 105 ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. . . ."). In turn, the Court declines to use its equitable powers to exempt the Debtor from the multiple duties and obligations with which she has been unable to comply.[11]

Accordingly, the Trustee's Motion is GRANTED and the parties' remaining motions are DENIED as moot.

Date: May 4, 2026

By the Court,

_____

John A. Dorsey, Jr.

U.S. Bankruptcy Judge

---

[11] After the hearing on April 22, 2026, the Debtor filed a supplemental affidavit consisting of a text message exchange between her and someone purportedly associated with D'Amico (Doc. #84). Even assuming the purpose for which they were submitted were true, it does not resolve or dispel the issues raised by the Trustee or those discussed during the hearing, which the Court has thoroughly addressed herein.